UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

RUSSELL RAYMOND NECAISE, JR.,                    CASE NO. 09-50322-NPO

DEBTOR.                                                                    CHAPTER 11

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART THE DEBTOR'S MOTION FOR GRANT
OF DISCHARGE AND FOR ENTRY OF FINAL DECREE CLOSING CASE

On April 8, 2010, there came for hearing (the "Hearing") the Motion for Grant of Discharge and for Entry of Final Decree Closing Case ("Motion") (Dkt. No. 194) filed by Russell Raymond Necaise, Jr. ("the Debtor"); the Objection to Motion for Granting of Discharge ("Hancock Bank Objection") (Dkt. No. 198) filed by Hancock Bank; and the United States Trustee's Response to Debtor's Motion for Grant of Discharge and for Entry of Final Decree Closing Case ("UST Response") (Dkt. No. 199) filed by R. Michael Bolen, the United States Trustee for Region 5 (the "UST"), in the above-styled bankruptcy case. At the Hearing, William J. Little, Jr. appeared on behalf of the Debtor, William P. Wessler appeared on behalf of Hancock Bank, and Robert C. Gravolet appeared on behalf of the UST. Counsel for the parties presented arguments at the Hearing and submitted post-hearing briefs on the issues. The Court, having considered the arguments and briefs, finds that the Motion should be granted in part and denied in part as more specifically set forth herein.

**Jurisdiction**

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A). Notice

of the Motion was proper under the circumstances.

## Facts

1. On February 23, 2009, the Debtor filed a voluntary petition for relief (Dkt. No. 1) under chapter 11 of the Bankruptcy Code and has been operating and conducting his business as a debtor in possession under 11 U.S.C. §§ 1107 and 1108.[1]

2. On August 21, 2009, the Debtor filed his Second Amended Disclosure Statement ("Disclosure Statement") (Dkt. No. 126) and Second Amended Plan of Reorganization (the "Plan") (Dkt. No. 127). On October 16, 2009, an Order Approving Second Amended Disclosure Statement of the Debtor and Fixing Time for Filing Acceptances or Rejections to the Second Amended Plan of Reorganization Combined with a Hearing Notice Thereof (Dkt. No. 156) was entered. An Order Confirming Plan of Reorganization ("Confirmation Order") (Dkt. No. 170) was entered on December 18, 2009. The Plan provides for payment, *inter alia*, of: (1) all administrative claims on the effective date; (2) priority tax claims in sixty (60) installments; (3) the secured claim of Hancock Bank through the sale of certain real property; and (4) unsecured claims by distributions of proceeds from sales of certain real and personal property. The Plan further provides for the surrender of a vehicle to Chrysler Financial.

3. The Confirmation Order provides that the Debtor is authorized to conduct and change his business and to use, operate, and deal with assets and property without supervision by the Court or the UST, including incurring liabilities, financing transactions, granting security interests and liens, and executing and consummating contracts for the sale, lease, or other disposition of

---

[1] Hereinafter, all code sections refer to the United States Bankruptcy Code, located at Title 11 of the United States Code, unless specifically noted otherwise.

property of the Debtor. The Confirmation Order also contains a provision stating that "upon completion of all payments under the Plan, unless otherwise ordered after notice and a hearing pursuant to § 1141(d)(5), the Debtor shall be discharged . . . ." Confirmation Order at 6.

4. On March 2, 2010, less than three months after entry of the Confirmation Order, the Debtor filed the Motion requesting an early discharge pursuant to § 1141(d)(5)(A) and (B) and the entry of a final decree closing his case pursuant to § 350(a), Fed. R. Bankr. P. 3022, and Miss. Bankr. L.R. 3022-1.

5. In the Motion, the Debtor asserts that the confirmed Plan required him to liquidate certain assets and to distribute eighty percent (80%) of the net sales proceeds from those assets to unsecured creditors on a pro-rata basis. To that end, the Debtor made an initial distribution of over $200,000 to unsecured creditors on February 26, 2010. The Debtor further asserts that only three assets remain to be liquidated for the benefit of unsecured creditors, for which court approval is not necessary. In urging the Court to grant him a discharge before completion of his payments under the Plan or, in the alternative, to close his case without a discharge, subject to it being reopened after completion of all Plan payments, the Debtor requests that he be relieved from certain burdens, including those imposed by the UST:

> Delaying the Debtor's discharge until completion of the Plan payments and keeping the Chapter 11 case open would serve only to require the Debtor to continue to file monthly operating reports, pay quarterly U.S. Trustee's fees, obtain authority from the Court to employ professionals and to obtain authority from the Court to pay professionals. Granting the Debtor a discharge at this point in time would alleviate the expense and burden of performing these functions. Under the Second Amended Plan, the Debtor is responsible for making payments to Hancock Bank, a secured creditor, out of the 20% the Debtor retains from the sale of assets. The grant of an early discharge and closure of the Chapter 11 case would put the Debtor in a position to have a greater likelihood of making payments required to Hancock Bank.

Motion at ¶ 8.

6. Hancock Bank filed the Hancock Bank Objection on March 22, 2010, denying that the Debtor alleged sufficient cause to justify an early discharge. However, Hancock Bank does not object to entry of an order closing the case and relieving the Debtor of the obligation to file monthly operating reports and pay quarterly fees.

7. The UST filed the UST Response on March 23, 2010, in which he noted that the Debtor has filed all required monthly operating reports and has paid all quarterly fees due. He pointed out that until entry of a final decree pursuant to Fed. R. Bankr. P. 2015(a)(5), the Debtor will remain responsible for providing reports of post-confirmation disbursements and for paying all additional fees that accrue. The UST requested entry of an order requiring that the Debtor pay all quarterly fees pursuant to 28 U.S.C. § 1930(a)(6), as amended.

8. After the Hearing, this Court instructed the parties to file post-hearing briefs[2] to respond specifically to issues raised in In re Belcher, 410 B.R. 206 (Bankr. W.D. Va. 2009), a decision in which the bankruptcy court denied a debtor's request for an early discharge or an order closing his case without a discharge because that court found that the debtor's desire to be relieved of the obligation to pay quarterly fees to the UST was insufficient cause for granting such relief.

---

[2] On April 29, 2010, a letter brief was filed on behalf of the Debtor ("Debtor Brief") (Dkt. No. 201), and on May 10, 2010, a letter brief in response was filed on behalf of Hancock Bank ("Hancock Bank Brief") (Dkt. No. 202). A letter brief in response was filed also on behalf of the UST on June 1, 2010 ("UST Brief") (Dkt. No. 205). The UST Brief was filed untimely. This Court, however, did not require the brief. Rather, the UST filed the UST Brief in order to confirm that an article written by a trial attorney in the Executive Office of the United States Trustee's office in Washington, D.C. and cited by the Debtor in the Debtor Brief, accurately reflects the position of the UST in this case. This article is discussed later in this Memorandum Opinion.

**Discussion**

**A. Relief Requested in the Debtor's Motion**.

In the Motion, the Debtor requests that this Court discharge him prior to completion of all payments under his confirmed Plan pursuant to § 1141(d)(5) and enter a final decree closing his case, thereby relieving him of his obligation to pay quarterly fees to the UST. In the alternative, he requests that this Court close his case, subject to it being reopened[3] at a later time for entry of an order of discharge upon completion of his payments under the Plan. The Debtor insists that, "[t]here is no practical reason for waiting for the Debtor to receive his discharge until all payments have been made . . . ." Motion at ¶ 12. Similarly, the Debtor contends that this Court should not delay entering a final decree closing the case on the basis that payments under the Plan have not been completed. In support of his position, the Debtor cites § 350(a), Fed. R. Bankr. P. 3002, the 1991 Advisory Committee Note to Fed. R. Bankr. P. 3002, and Miss. Bankr. L.R. 3022-1(a). Motion at ¶16.

**1. Discharge for individual debtors under § 1141(d)(5).**

Before passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[4] confirmation of a plan discharged an individual chapter 11 debtor under the provisions of § 1141(d). BAPCPA amended § 1141(d) by deleting this provision, as it applied to individual debtors, and adding new subsection (d)(5). Now, completion of plan payments (rather

---

[3] The Debtor also requests that he be allowed to reopen his case without the payment of a filing fee. The Court does not decide at this time whether the fee may be waived or whether it should be waived in this case. See 28 U.S.C. § 1930; Bankruptcy Fee Compendium III, Part J and Exhibit 2.

[4] Pub. L. No. 109-8, 119 Stat. 23 (2005).

than plan confirmation) discharges an individual debtor.[5] In the alternative, an individual debtor may seek a discharge before completion of his plan payments, an early discharge, under either subsection (A) or (B) of § 1141(d)(5).

### a. Section 1141(d)(5)(A).

Subsection (A) of § 1141(d)(5) states that unless otherwise ordered for cause, completion of payments under the plan, rather than confirmation of the plan, discharges the individual debtor:[6]

(5) In a case in which the debtor is an individual—

> (A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan.

11 U.S.C. § 1141(d)(5)(A). Courts, including those at the appellate level,[7] generally have recognized that an individual chapter 11 debtor must complete payments under his plan pursuant to § 1141(d)(5) before he can obtain his discharge. Collier on Bankruptcy, however, offers an additional gloss on

---

[5] Some of the changes made by BAPCPA that are applicable to individual chapter 11 debtors were drawn from chapter 13 provisions, such as the delay of discharge until completion of plan payments. 8 Collier on Bankruptcy ¶ 1141.L.H. (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (§§ 1141(d)(5)(A) and (B) were added to conform the individual chapter 11 debtor discharge to same general model as chapter 13 discharge with some important exceptions); Walter W. Theus, Jr., Individual Chapter 11s: Case Closing Reconsidered, 29 Am. Bankr. Inst. J. 1, 61 (Feb. 2010) ("BAPCPA appears to have been intended to make individual chapter 11 cases work like 'big' chapter 13 cases.").

[6] In chapter 11 cases not involving individual debtors, confirmation of a plan generally discharges the debtor pursuant to § 1141(d)(1).

[7] See Torrington Livestock Cattle Co., v. Berg (In re Berg), 423 B.R. 671, 676 (10th Cir. BAP 2010) (under § 1141(d)(5) court generally may not enter an order discharging debts until debtor has completed all payments required under confirmed plan); United States v. White, 466 F. 3d 1241, 1246 (11th Cir. 2006) (under 2005 amendment confirmation itself no longer serves as discharge for individual debtors); Shotkoski v. Fokkena (In re Shotkoski), 420 B.R. 479, 482 (8th Cir. BAP 2009) (as a result of 2005 BAPCPA amendments an individual debtor's discharge is not entered until completion of payments under the plan).

the language contained in subsection (A):

> However, because the provision generally prohibits the court from granting a discharge upon confirmation "until" payment completion but allows the court to order otherwise for cause, the more natural reading is that in the appropriate case, the court may grant a discharge upon confirmation, rather than only upon completion of payments. Such might be the case, for example, for an individual debtor who did not expect to make plan payments primarily from future earnings, consistent with the ordinary chapter 13 model, but rather contemplated a plan more consistent with the ordinary chapter 11 model, such as by distributions of property or, in the unusual case, by the issuance of securities by the debtor's business, perhaps from a new corporation to be formed by the debtor under the plan.

8 Collier on Bankruptcy ¶ 1141.05[2][a] (Alan N. Resnick & Henry J. Sommer eds.,15th ed. rev.) (footnotes omitted). Notably, the Debtor here did not request an early discharge at the time of confirmation of his Plan.

### b. Section 1141(d)(5)(B).

Subsection (B) under § 1141(d)(5) provides the conditions under which an individual debtor may obtain a discharge post-confirmation but before completion of his plan payments:

> (B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—
>
> > (i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date; and
> >
> > (ii) modification of the plan under section 1127 is not practicable.

11 U.S.C. § 1141(d)(5)(B).[8] Although there are parallels between the discharge provisions in chapter 11 for individual debtors and those in chapter 13, a discharge under chapter 13 before completion

---

[8] Section 1141(d)(5)(C) is not in issue.

of all plan payments requires proof that the "debtor's failure to complete [payments under the plan] is due to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1328(b)(1). The absence of a comparable "hardship" provision in § 1141(d)(5)(B) suggests that an early discharge for an individual in a chapter 11 case hinges only on payment under the plan of at least liquidation value and the practicality of a later plan modification. 8 Collier on Bankruptcy ¶ 1141.05[2][b] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (footnotes omitted).

### 2. The alternative request for early case closure under § 350 and entry of final decree under Fed. R. Bankr. P. 3022.

As an alternative to an early discharge under § 1141(d)(5), the Debtor requests the early closure of his case, subject to it being reopened at a later time for this Court's entry of a discharge order. Section 350 governs case closings. Specifically, § 350(a) states that "[a]fter an estate is fully administered . . . , the court shall close the case."[9] Fed. R. Bankr. P. 3022 implements § 350 in chapter 11 cases by requiring the entry of a final decree closing cases after an estate is fully administered. In determining whether an estate has been fully administered for purposes of case closure, the 1991 Advisory Committee Note to Fed. R. Bankr. P. 3022[10] offers the following useful

---

[9] Because no trustee has been appointed in the Debtor's case, the provision of § 350 requiring discharge of the trustee before closure of a case is inapplicable and is omitted from this quotation.

[10] Generally, courts have found this Advisory Committee Note instructive. See Weaver v. Texas Capital Bank N.A. (In re SL Management, LLC), 2010 WL 1379749,*4 (Bankr. N.D. Tex. Mar. 30, 2010) (court considered the Advisory Committee Note in its decision); In re Union Home and Indus., Inc., 375 B.R. 912, 917 (10th BAP 2007) (factors in Advisory Committee Note are not considered exhaustive); Shotkoski, 420 B.R. at 483 (noting that the Advisory Committee Note is the only guidance available to courts for determining whether estate has been fully administered and that there may be a question as to its applicability after the 2005 amendments); Theus, supra note 5, at 63 (the 1991 Advisory Committee Note is instructive and has not been modified); but see Belcher, 410 B.R. at 219 (acknowledging authority for closing chapter 11 cases under 1991 Advisory Committee Note to Fed. R. Bankr. P. 3022 even though all plan payments were not made but concluding that the authority and practice were inapplicable to post-BAPCPA chapter 11 plans).

guidance:

> Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed. Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022, Advisory Committee Note (1991). Under Miss. Bankr. L.R. 3022-1, a debtor may seek a final decree "at any time after the confirmed plan has been entered provided that all required fees due under 28 U.S.C. §1930 have been paid."[11]

## B. Cases and Authorities.

Since the passage of BAPCPA, those courts that have dealt with early discharges or early closings of individual debtor cases under chapter 11 have reached varying positions in their interpretations of the applicable statutory provisions and rules. A review of these cases is helpful in clarifying the determination reached by this Court.

### 1. Cases denying early discharge or closing.

As mentioned previously, the bankruptcy court in Belcher concluded that the debtor was not entitled either to an early discharge or to the early closing of his case. Belcher, 410 B.R. at 218-19. The Belcher court found that the debtor was not eligible for an early discharge under § 1141(d)(5)(B) because the debtor could not show that modification of the plan was not practicable under subsection (ii). The debtor's confirmed plan relied upon future income to make payments to unsecured creditors

---

[11] There has been no indication that required fees have not been paid. See UST Response.

and, therefore, it was not only possible, but also likely, that some modification of the plan would become necessary if the debtor's income changed. The court further concluded that avoiding fees that accrue to the UST until a case is closed or dismissed did not qualify as "cause" under § 1141(d)(5)(A) to allow an early discharge. Otherwise, the exception would swallow the general rule, because such fees are routinely applied to individual chapter 11 debtors who presumably would prefer not to pay them. Having dispensed with the debtor's request for an early discharge, the Belcher court also ruled there was no arguable basis for closing the case without the entry of a discharge order because it found that the case had not been fully administered within the meaning of § 350(a).

Likewise, other courts have refused to grant an early discharge or case closing. In In re Ball, 2008 WL 2223865 (Bankr. N.D.W. Va. May 23, 2008), the bankruptcy court determined that the debtor was not eligible for an early closure of his case because it had not yet been fully administered under § 350(a). The court found that payments had not been completed under the plan because a class of creditors had received a promissory note instead of cash. In considering whether the debtor was entitled to an early discharge under § 1141(d)(5)(A), the court noted that the only cause stated by the debtor was his desire to avoid paying UST quarterly fees and filing post-confirmation reports. The court was not persuaded that the debtor was entitled to be relieved from his obligations to pay the quarterly fees where his chapter 11 plan proposed the liquidation of certain assets and was anticipated to have a relatively short life span. The court left open the issue of whether the requested relief would be appropriate in a case of longer duration, such as a five-year plan.

In Shotkoski, the Eighth Circuit BAP upheld the bankruptcy court's decision denying the debtor's motion for entry of a final decree where the debtors had asserted that they had substantially

consummated the plan, there were no required deposits, they had assumed the management of the property, and they had begun making plan payments. Shotkoski, 420 B.R. at 480-81. Recognizing that requests for final decrees are reviewed on a case-by-case basis to determine whether a case has been fully administered, the BAP concluded that a bankruptcy court's determination in that regard is entitled to deference and is reviewed only for an abuse of discretion. In affirming the bankruptcy court's decision, the court emphasized that it was not holding that every chapter 11 case filed by an individual must remain open until all plan payments have been completed and specifically noted that it did not disagree with those courts that had chosen to close individual chapter 11 cases early "for purposes of convenience and efficiency." Shotkoski, 420 B.R. at 483.

**2. Cases granting early discharge or closing.**

Other courts have approved of closing individual chapter 11 cases early. For example, in In re Johnson, 402 B.R. 851 (Bankr. N.D. Ind. 2009), the debtor moved the court to close his case early, subject to reopening it after completion of plan payments for entry of a discharge order. The debtor sought the closure of his case to eliminate the accrual of U.S. Trustee quarterly fees, thereby reducing his expenses and increasing the distribution to creditors. The bankruptcy court applied those factors listed in the Fed. R. Bankr. P. 3022 Advisory Committee Note, determined the case to be fully administered, and ordered it closed. According to the Johnson court, the fact the debtor had not completed his plan payments and, thus, had not received a discharge, did not prevent his case from being fully administered under § 350(a). The court commented that "in one sense the question becomes one of closing the case early so that creditors can be paid more or leaving it open and paying the U.S. Trustee. As between paying the money to creditors or paying it to the U.S. Trustee, the court believes the balance favors debtor's creditors." Id. at 857. The court further noted that "the

costs of leaving this case open will outweigh the benefits of doing so and that creditors will be better off [if] it is closed now." Id. at 858. The court also recognized that a bright line rule prohibiting the closure of any case until payments have been completed is not practical in those cases where the individual chapter 11 debtor has long-term debt obligations.

Relying upon the Johnson court's analysis of the issues, the bankruptcy court in In re Hilburger, 2009 WL 1515125 (Bankr. W.D.N.Y. May 29, 2009), concluded that it was appropriate to close early those cases where the UST quarterly fees would adversely impact recovery by creditors. The court held that it was "disinclined to interpret the Bankruptcy Code in such a way as to foist the quarterly-fees onto creditors." Id. at *2.

The bankruptcy court in In re Sheridan, 391 B.R. 287 (Bankr. E.D.N.C. 2008), considered whether a discharge could be granted upon confirmation of a plan as requested by the debtors in their disclosure statement. The court observed that § 1141(d)(5)(A) allowed the court to deviate from the general rule after notice and a hearing if the court found sufficient cause. The court concluded that the notice requirement in the statute was satisfied by a conspicuous notice in the disclosure statement and in the notice of the confirmation hearing. The court further determined there was sufficient cause for granting a discharge prior to completion of plan payments under § 1141(d)(5)(A) where the debtors provided their unsecured creditors significant assurance of payments by granting them a second deed of trust on their primary residence.

In considering the impact of § 1141(d)(5), the bankruptcy court in In re Brown, 2008 WL 4817505 (Bankr. D. Dist. Col. Oct. 29, 2008), commented that it did not believe Congress wrote the statute with long-term mortgage payments in mind. The court suggested that cause existed for allowing a debtor to obtain an early discharge even when the debtor had not completed monthly

mortgage payments, a plan obligation that could last for many years. On a procedural point, however, the court held that if a debtor wished to alter the usual statutory rule by treating the order of confirmation as a discharge, his request must be sought in a separate motion and set for hearing at the time of confirmation.

### 3. Other authority approving early discharge or closing.

In the UST Brief, counsel for the UST confirmed that the policy of the U.S. Trustee Program, as set forth in an article published in the American Bankruptcy Institute Journal is that the U.S. Trustee Program "will not object to an individual chapter 11 debtor's request to close the case before discharge, subject to reopening for the entry of a discharge upon the completion of plan payments, if the estate has been fully administered and any trustee has been discharged." See Walter W. Theus, Jr., Individual Chapter 11s: Case Closing Reconsidered, 29 Am. Bankr. Inst. J. 1, 62 (Feb. 2010). An analysis of early case closings was included in the article, which was written by a trial attorney in the Executive Office for U.S. Trustees in Washington, D.C. The author concluded his analysis by expressing the following position:

> The USTP's decision not to object to an individual chapter 11 debtor's request to temporarily close the case after the estate has been fully administered comports with both the Bankruptcy Code and bankruptcy policy. Rights of debtors and other parties in interest are protected, and funds that debtors would otherwise use to pay quarterly fees become available to increase payments to creditors.

Id. at 64.

**C. Arguments and Analysis.**

The Court will address the issue of early discharge separately from the alternative relief requested by the Debtor, early closure of his case.

**1. Discharge.**

    **a. Section 1141(d)(5)(A).**

Under a natural reading of § 1141(d)(5)(A), as suggested in Collier on Bankruptcy, this Court may grant the Debtor a discharge upon confirmation of his plan, rather than upon completion of his payments under the Plan, upon a showing of cause. Because the Debtor *sub judice*, however, did not request a discharge at the time of his plan confirmation, the Court concludes that the Debtor has not established the elements required under § 1141(d)(5)(A) to justify the early discharge allowed under that section.[12] Even if this Court were to interpret § 1141(d)(5)(A) as allowing a Debtor to show cause for an early discharge post-confirmation, the Court would conclude that the Debtor has not done so here under the specific circumstances of this case.

    **b. Section 1141(d)(5)(B)(i)-(ii).**

The Debtor asserts that he has satisfied the statutory requirements for discharge prior to completion of Plan payments under sub-subsection (i) of § 1141(d)(5)(B) because no distributions of property were made on the effective date of the Plan and no distributions of property would have been made if his estate had been liquidated under chapter 7 *on that same date*. In support of his latter assertion, the Debtor insists that after liquidation, a chapter 7 trustee must object to claims, file

---

[12] See Brown, 2008 WL 4817505 (court held that a request for discharge before completion of plan payments should be heard at the time of confirmation); Sheridan, 391 B.R. at 291 (conspicuous notice of request for discharge before completion of plan payments was contained in disclosure statement and notice of confirmation hearing).

tax returns, submit a final report, and obtain approval of that final report, all of which may take 18 months to two years to accomplish.

The Court is not persuaded by the Debtor's argument on this point. The text of § 1141(d)(5)(B)(i) presumes a hypothetical in its requirement of a distribution of property not less than "the amount that *would have been* paid on [account of each allowed unsecured] claim *if* the estate of the debtor had been liquidated under chapter 7 on such date." 11 U.S.C. § 1141(d)(5)(B)(i) (emphasis added). It does not require an actual comparison of the amount of funds available through the final reporting and accounting stage of the liquidation process. Moreover, the Court finds the Debtor has not shown that the value of property actually distributed under the Plan is at least the same as the amount that would have been paid to the unsecured creditors through a chapter 7 liquidation, given that certain property under the Plan yet remains to be distributed.

Because the Court has concluded that the Debtor has not satisfied the requirements of § 1141(d)(5)(B)(i), it is unnecessary to address whether the Debtor has also satisfied sub-subsection (ii) under § 1141(d)(5)(B). The Court, nevertheless, would find that the Debtor has not shown that modification of his Plan would not be practicable. Even though the Debtor has already distributed over $200,000 to his unsecured creditors, the plan contemplates distribution of additional sales proceeds.[13] Accordingly, the Court concludes that the Debtor has not sufficiently established criteria necessary to justify an early discharge prior to completion of plan payments under either § 1141(d)(5)(A) or (B).

---

[13] The Debtor in the Debtor Brief admits, "I cannot think of a case where modification of the plan under § 1127 is not practicable," and that a modification of the Plan may be necessary to clarify the amount of administrative expenses paid from the Debtor's share of sales proceeds. Debtor Brief at 3, 4.

**2. Closure and Final Decree.**

The Court next turns to the Debtor's alternative request that this Court enter a final decree closing his case, subject to reopening it for entry of a discharge order upon completion of his plan payments. Pursuant to § 350 and Fed. R. Bankr. P. 3022, this Court may grant the Debtor such relief only if his case has been fully administered. The determination of whether a case is fully administered is reviewed on a case by case basis. See Shotkoski, 420 B.R. at 483 (requests for entry of a final decree are to be reviewed on a case-by-case basis in determining whether an estate has been fully administered); In re Union Home & Indus., Inc., 375 B.R. at 917 (determining when a case is "fully administered" is a decision for the bankruptcy court based on consideration of numerous case-specific, procedural, and practical factors). In making this determination, the Court considers those factors listed in the Advisory Committee Note to Fed. R. Bankr. P. 3022, as set out above. Applying those specific factors to the facts of this case, the Court finds that: (1) the Confirmation Order has become final; (2) the Debtor has assumed the business and the management of the property to be dealt with under the Plan; (3) the Debtor has commenced distributions under the Plan; and (4) there are no pending motions, contested matters, or adversary proceedings to be resolved. Indeed, what remains to be accomplished under the confirmed Plan is the liquidation of three assets, for which court approval is not required, as provided in the Plan.

This Court agrees with those authorities that have held that individual chapter 11 cases may be determined to be fully administered, even though a discharge has not yet been entered. SL Management, LLC, 2010 WL 1379749,*4. Such cases may be subject to being reopened at a later time for entry of a discharge order upon completion of plan payments. This approach addresses the concerns relating to the costs incurred by an individual chapter 11 debtor whose case remains open

post-confirmation, including costs for payment of UST quarterly fees, for preparing and filing monthly operating reports, and for retention of professionals. It also promotes the goals of increasing the likelihood of a successful reorganization by potentially increasing distributions to creditors of the bankruptcy estate resulting from the reduction of such costs.

Considering the weight of the factors establishing that the case has been fully administered and the rationale offered by the authorities reviewed herein, the Court finds that the Debtor has established the factors necessary to conclude that his estate has been fully administered for purposes of closing his case pursuant to § 350, Fed. R. Bankr. P. 3022, and Miss. Bankr. L. R. 3022-1. Of particular importance to the Court in reaching this decision is the policy of the United States Trustee's Program on this matter, as discussed previously. Given that the closure of this case impacts the UST as much as the Debtor and given the absence of any controlling authority that prohibits the relief sought by the Debtor, this Court finds it appropriate to give weight to the UST's position and allow the early closure of this case.

**Conclusion**

Based on the foregoing, the Court concludes that the Debtor has not established the elements required for entry of a discharge order prior to completion of payments under the confirmed Plan pursuant to § 1141(d)(5)(A) or (B). The Court further concludes that the Debtor has established sufficient criteria for the Court to find that the case has been fully administered pursuant to § 350, Fed. R. Bankr. P. 3022, and Miss. Bankr. L.R. 3022-1.

IT IS, THEREFORE, ORDERED that the Motion is denied in part without prejudice, and the Debtor is not entitled to a discharge at this time.

IT IS FURTHER ORDERED that the Motion is granted in part, and the case may be closed to the extent all requirements for closing the case have been met; the closing of the case is subject

to it being re-opened after the completion of plan payments, upon proper notice and a hearing, in order for the Debtor to request entry of a discharge order.

     SO ORDERED.

                                                             /s/ Neil P. Olack
                                                           Neil P. Olack
                                                           United States Bankruptcy Judge
                                                           Dated: August 20, 2010